[L. A. No. 11756.   In Bank.—March 30, 1932.]

JOHN P. MILLS ORGANIZATION, INC. (a Corporation), Respondent, v. ROBERT UNGER, Defendant; GUARD-IAN INVESTMENT CORPORATION OF CALIFOR-NIA (a Corporation), Appellant.

Lewis Cruickshank and Donald Armstrong for Appellant.

W. I. Gilbert and Howell Purdue for Respondent.

THE COURT.—Defendant Guardian Investment Corporation of California appeals from a judgment rendered

against it on a surety bond in which defendant Unger was named as principal, and plaintiff was named as beneficiary.

The facts out of which this controversy arose are as follows:

In June, 1926, plaintiff sold to Unger ten vacant lots located in the city and county of Los Angeles. Plaintiff accepted a small down payment on the purchase price, and as evidence of the balance accepted ten promissory notes secured by ten deeds of trust. Nine of these notes were in the sum of $1959.30 each, while the tenth note was in the sum of $1454.30, making a total of $19,088 due and owing from Unger to the plaintiff on the purchase price. As part of the same transaction it was agreed that Unger was to erect a dwelling-house on each lot to cost and to be reasonably worth at least $3,000. In order that Unger could obtain this sum plaintiff agreed that its deeds of trust were to be second in point of priority to a first mortgage of $3,500 on each lot. These first mortgages were secured by Unger, the money being advanced by the defendant Guardian Investment Corporation of California. In order to indemnify itself against Unger failing to build according to the contract, plaintiff required that Unger secure a surety bond from the defendant corporation. This bond was secured by Unger and is pleaded as an exhibit to the amended complaint. The bond is in the sum of $19,593, naming plaintiff as beneficiary, and recites that Unger has agreed to fully complete within 120 days a five-room dwelling-house on each lot to cost and to be reasonably worth not less than $3,000, and further recites the fact of the sale of the lots to Unger by plaintiff, and the nature of the security held by plaintiff to secure the purchase price. It is then provided that if Unger shall perform the terms and conditions of the building contract "the above written obligation shall be void; otherwise to run in full force and effect". Unger failed to perform his contract with plaintiff in that he failed to complete the houses within the time specified, and the houses he did erect cost and were reasonably worth but $2,538.93, instead of the $3,000 contracted for. After the breach of the contract by Unger, and prior to the commencement of this action, Unger defaulted on the notes owed to plain-

tiff. Plaintiff thereupon caused the trust deeds held by it to be declared in default and at the trustee's sale plaintiff purchased the lots for an amount equal to the total indebtedness owed by Unger. Plaintiff then brought this action to recover from the surety the full amount of the bond. The trial court found that the total value of plaintiff's equity in all of the lots over and above the amount of the first mortgages was $12,159.30. This finding was made in face of the fact that plaintiff had purchased the lots at the trustee's sale, after breach, for the full amount of the indebtedness owed to it by Unger. Based on this finding the trial court found that as one item of damage plaintiff should recover from the surety $6,928.70. This sum was arrived at by deducting from the total amount of Unger's indebtedness to plaintiff the value of the equity as found by the trial court. The court also allowed as further damages the sum of $200 expended by plaintiff to satisfy a mechanic's lien; $311.97 expended by plaintiff in replacing various fixtures stolen from the premises by persons unknown; and $1745.50 expended by plaintiff in altering and repairing some of the driveways which Unger had constructed so as to encroach on adjoining properties. Judgment was therefore rendered against defendant surety in the sum of $9,186.17. From this judgment the surety has appealed.

We are of the opinion that when plaintiff purchased the properties at the trustee's sale for the full amount of the indebtedness due and owing to it, Unger and his surety were thereby discharged from all liability under the trust deeds and under the building contract. This is so because, although the bond is a guarantee that Unger would build the houses in the time and manner and of the value contracted for, it is obvious that the only purpose of securing the bond was to furnish plaintiff with additional security for the trust deeds held by it. The sole interest of plaintiff either in the building contract or in the property was represented by the trust deeds it held. Plaintiff had conveyed title to the lots to Unger and all that remained in it was the interest represented by its trust deeds. The sole purpose of executing the bond was to protect that interest. It is obvious that if Unger had paid the money owed to plaintiff in full, it would have no

further interest in the building contract or in the lots. It is likewise obvious that if Unger had paid plaintiff in full, such payment would discharge the surety of all liability on the bond. This follows from the fact that if plaintiff had received payment to the full extent of every interest which it possessed, it could suffer no damage by Unger breaching the building contract. If paid in full there would remain nothing to which the indemnity could possibly apply. The indebtedness owed to plaintiff by Unger and secured by the trust deeds was in the amount of $19,088. As already stated, it was to protect that interest that the bond was given. When Unger breached the building contract a cause of action arose in favor of plaintiff and against the surety to whatever extent the security of plaintiff had been diminished by the breach. Plaintiff could have immediately brought suit against the surety to have that loss determined. It did not thus proceed but saw fit to declare the trust deeds in default, and at the trustee's sale purchased the property for the full amount of the indebtedness secured by the deeds of trust. The obligations of Unger under the ten trust deeds were, by such purchase, discharged and satisfied. This would be obvious had some third person purchased at the sale for the full amount of the trust deeds, and had this sum been paid to the plaintiff by the trustee. In that event plaintiff would have been paid in full for the indebtedness owed to it, and no action could exist against Unger or his surety. The fact that the creditor bought in the property for that amount does not alter the legal effect of the transaction. By purchasing the property for the full amount of the indebtedness the plaintiff by its own act discharged Unger and his surety from all further liability on the trust deeds or on the building contract.

A case where the factual situation was somewhat similar to the case at bar is *Westcott* v. *Fidelity & Deposit Co.*, 87 App. Div. 497 [84 N. Y. Supp. 731]. In that case plaintiff sold certain property to one Talbot for $55,000, Talbot giving back to plaintiff a purchase-money mortgage in that sum. As part of the same transaction, plaintiff agreed to make certain advances to Talbot for the purpose of having Talbot erect a building on the

premises, and agreed to take a building mortgage to secure these advances. As additional security plaintiff required that Talbot secure a bond in the sum of $15,000 in favor of plaintiff guaranteeing that Talbot would comply with the building agreement. Talbot secured such a bond from the defendant, the provisions of the bond being somewhat similar to the one in the present case. After plaintiff had made many advances under the building agreement Talbot refused to complete the building. Plaintiff then foreclosed the building mortgage, and purchased the property at the foreclosure sale, and secured a deficiency judgment against Talbot in the sum of $2,300. Plaintiff then completed the building at a cost in excess of the penalty provided in the bond, and then sued the surety for the full amount of the bond. The trial court granted judgment in favor of plaintiff for that amount. On appeal this judgment was reversed, it being held that the sole damage suffered by plaintiff was the amount of the deficiency judgment. At page 734 the court stated:

"The bond, as we have observed, provides for indemnity; and, if the debt cannot be enforced against the principal debtor, it certainly follows that it cannot be against the surety. The interest of the plaintiff was to have his mortgages paid. He had no other. He did not become entitled to receive the profit which might have been made by Talbot, had he completed the contract, and had no interest therein except as the same furnished security for the payment of his mortgages. Suppose Talbot had made no attempt to perform the contract by the erection of the buildings, and had paid the mortgages, principal and interest, in full to the plaintiff; could it be for a moment claimed that he would have a cause of action in addition thereto for the full amount of the penalty of the bond? It is to be borne in mind that the defendant, if it be compelled to pay the amount of the bond, has a remedy over against Talbot or his assignee, or both; and, if judgment pass against it, it may collect the amount thereof from the principal debtor. The mortgages being paid, the plaintiff could enforce nothing against the mortgagor or his assigns, yet liability against them would arise the moment the bond is en-

forced; and, to the extent of $15,000, the mortgagor or assigns may be made liable, although there is no indebt-edness or liability existing against them in favor of the mortgagee. Such liability may not be created by indirection any more than it could be in an action between the mortgagor and mortgagee. The only difference in the present case is the method by which the mortgages were paid; but that is not material, for, when the plaintiff elected to take the property as purchaser, he became chargeable with the value of the land, and was bound to apply it upon his mortgage indebtedness. As the property was worth the amount of the purchase-money mortgage and the amount of the plaintiff's bid at the sale, it operated as payment to that extent. Making the application of these sums upon the mortgages, it is found that the amount needed to indemnify the plaintiff for his entire interest is the amount of the deficiency judgment, and for this sum the defendant offered to permit judgment to be taken.''

The position taken by the New York court in the above case has been recently approved in *McCauslan* v. *Zoar Holding Co.*, 131 Misc. Rep. 148 [227 N. Y. Supp. 75], and in *Sautter* v. *Frick*, 133 Misc. Rep. 517 [232 N. Y. Supp. 529].

We are in accord with the theory of those cases.

■ Counsel for respondent contend that the above principles are not applicable to this case for the reason that although the plaintiff purchased the property for the full amount of the indebtedness at the trustee's sale, the trial court found in this action that it did not receive $19,088 in value (the total amount of the indebtedness) at such sale, but only received $12,159.30 in value. We cannot see how that finding can possibly affect the fact that plaintiff bid in the property for the full amount of the indebtedness and this discharged the obligation of Unger on the trust deeds, and discharged the surety's liability on the bond. When the trust deeds were discharged the liability of the surety was discharged with them. If plaintiff had only bid $12,159.30 for the property and had taken a deficiency judgment for the balance, it could undoubtedly have recovered the amount of the deficiency from the surety under the authority of the cases cited, *supra*. (See, also, *Hunstock* v. *Royal Sec. Corp.*, 51 Cal. App. 769 [197 Pac. 963].) But plaintiff voluntarily

at a competitive sale purchased the property for the full amount owed to it. As already stated, this constituted payment in full of the indebtedness the bond was given to secure. Obviously it cannot complain now that it paid too much for the property. Having elected to purchase at the sale for the full amount of the indebtedness it discharged Unger from any further liability, and likewise absolved the surety from liability on a bond given to secure that very indebtedness.

For the foregoing reasons the judgment appealed from is reversed.