[Civ. No. 9795. Fourth Dist., Div. One. June 12, 1970.]

SURETY SAVINGS AND LOAN ASSOCIATION,
Plaintiff and Respondent, v.
NATIONAL AUTOMOBILE AND CASUALTY INSURANCE CO.,
Defendant and Appellant.

## COUNSEL

Anderson, McPharlin & Conners, Robert C. Haase, Jr., and Gerald W. Murphy for Defendant and Appellant.

McKenna & Fitting, Les J. Weinstein and Michael D. Berk for Plaintiff and Respondent.

## OPINION

**COUGHLIN, Acting P. J.**—Defendant appeals from a judgment awarding plaintiff damages on an undertaking executed by defendant as a condition to issuance of a preliminary injunction restraining a foreclosure sale instituted by plaintiff.

Plaintiff made a construction loan to Signal Development Company evidenced by a promissory note secured by a deed of trust on the real property on which apartment houses were to be built. Signal defaulted in payments on its promissory note and plaintiff instituted proceedings to effect a foreclosure sale under its deed of trust, the sale being set for August 6, 1964. On the latter date Signal brought an action seeking to enjoin the sale; obtained a restraining order enjoining such; and on August 14, 1964, obtained a preliminary injunction restraining the sale until November 14, 1964. Issuance of the preliminary injunction was conditioned upon posting

an undertaking in the sum of $30,000. Defendant, on behalf of Signal, posted the undertaking in which it agreed to pay plaintiff such damages as the latter might sustain by reason of the preliminary injunction, if the court finally decided Signal was not entitled thereto. Thereafter the injunction was continued in effect until November 16, 1964. On the latter date Signal filed a petition under the Federal Bankruptcy Act and obtained an injunction in the federal court enjoining the sale until May 19, 1965, when the injunction was dissolved. The foreclosure sale, which had been postponed from time to time in response to the injunctions issued, was conducted on May 19, 1965.

On August 6, 1964, the original date for the foreclosure sale, there was owing and unpaid to plaintiff from Signal under the note and deed of trust the sum of $1,648,910. On May 19, 1965, the date the foreclosure sale actually was conducted, there was owing and unpaid to plaintiff from Signal under the note and deed of trust the sum of $1,759,976.69. Plaintiff bid $1,721,578.67 at the sale, which was the highest bid, and became the owner of the property described in the deed of trust. Crediting this amount upon the obligation left unpaid $38,398.02.

On March 25, 1966, the court, in the injunction action, entered a judgment of dismissal upon an order sustaining a demurrer without leave to amend which, in effect, was a determination Signal was not entitled to an injunction.

The foregoing facts established, and the trial court in the case at bench concluded, defendant was liable upon its undertaking for the damage plaintiff sustained as a proximate result of the preliminary injunction; and further concluded such damage was limited to the loss proximately resulting from the delay of the foreclosure sale from August 14, 1964, to November 13, 1964, i.e., the period during which the preliminary injunction was in force; and did not include loss proximately resulting from the delay during the period the federal injunction was in force. Upon this basis the court found plaintiff sustained the following items of damage as a proximate result of the preliminary injunction: (1) Expenses incurred for attorneys' fees in the sum of $900; (2) Expenses incurred for guard services to protect the security in the sum of $3,175.20; (3) Interest for the period from August 14, 1964, to November 14, 1964, in the sum of $26,398.17; (4) Delinquency charges accruing under the note secured by the deed of trust in the sum of $4,693; (5) Loss of rental income from the real property comprising the security as a result of the three-month delay in completion of construction of the apartment houses thereon, in the sum of $4,921.40; (6) Damages in an amount exceeding $30,000 as a result of the decline in the

fair market value of the real property subject to the deed of trust between August 14, 1964, and November 13, 1964, in the amount of $37,025.

█ It is well settled the damage recoverable under an injunction bond, such as the bond at bench, is for all loss proximately resulting from the injunction; the factors to be considered in determining the loss depend upon the circumstances of the case; the measure of damage will vary with those circumstances; arbitrary rules do not govern; equitable principles are applied; and the allowance, although often difficult to measure accurately, should furnish just and reasonable compensation for the loss sustained. (*Rice* v. *Cook,* 92 Cal. 144, 148-150 [28 P. 219]; *Russell* v. *United Pac. Ins. Co.,* 214 Cal.App.2d 78, 87 [29 Cal.Rptr. 346]; *Robinson* v. *Fidelity & Deposit Co.,* 5 Cal.App.2d 241, 245 [42 P.2d 653]; *Moore* v. *Maryland Cas. Co.,* 100 Cal.App. 658, 663 [280 P. 1008].)

Defendant contends the judgment should be reversed because the items of damage upon which it is predicated, as found by the court, either are the product of an erroneous measure of damage or are not supported by the evidence, except the two items of attorneys' fees and loss of rental.

Plaintiff contends the judgment is supported by the finding it was damaged in the sum of $37,025 resulting from the decline in the fair market value of its security, i.e., the property which was the subject of the deed of trust, between August 14, 1964, and November 13, 1964. The finding in question is premised upon evidence the market value of the security on August 6, 1964, was $1,481,000 and during the succeeding 90 days declined 2½ percent, i.e., $37,025. Plaintiff's contention is premised upon a misconception of the applicable rule. █ A decline in the market value of the security is material to a determination of damage only to the extent the decline affects the adequacy of the security to satisfy the obligation secured. The amount of damage on account of a decline in the adequacy of the security is the difference between the amount for which the security would have sold at the enjoined foreclosure sale and the amount for which it would have sold at a foreclosure sale immediately following the injunction period, not to exceed the difference between the amount of the obligation secured and the amount which would have been received from the later foreclosure sale or, in the event a later sale actually occurs, the difference between the amount of the obligation secured and the amount actually received from that sale. (*Yellen* v. *Fidelity & Cas. Co.,* 115 Cal. App. 434, 438, 441 [1 P.2d 1019].) █ The trial court made no finding respecting the amount for which the security might have been sold on August 6, 1964, or on November 14, 1964. As a consequence, plaintiff may not

rely upon the rule allowing damage for the decline in the adequacy of the security in support of the judgment.

Plaintiff also contends, even though the decline in market value is not a proper element of damage, the judgment is supported by the findings respecting other items of damage. In addition to the loss occasioned by the payment of attorneys' fees, we need consider only two other items, i.e., the loss occasioned by employment of guards to protect the security, in the sum of $3,175.20, and the loss attributable to the accrual of interest during the injunction period, in the sum of $26,397.17. The total of these three items is $30,472.37, which exceeds the amount of the judgment.

■ The evidence supports the conclusion plaintiff incurred expense for guard service, on a 24-hour-a-day basis, during the period August 14, 1964, through October 16, 1964, to protect the security from vandalism; the property was unoccupied; guard services had been obtained before August 14, 1964; and the continued need therefor after that date was caused by the preliminary injunction. The parties stipulated the plaintiff paid $50.40 a day for the services. The finding on the issues of proximate cause and the amount of damage respecting the loss on account of the employment of guards is supported by substantial evidence. Defendant's contention to the contrary is without merit.

The interest accruing on the obligation secured by the deed of trust during the 90-day period totalled $26,397.17. In the event the foreclosure sale had taken place on August 6, 1964, plaintiff would have received the proceeds therefrom in payment on that obligation. ■ The injunction prevented such payment and resulted in the loss of use of the money plaintiff would have received from the sale. The evidence shows plaintiff instructed the trustee under the deed of trust to bid for it on the property at the sale set for August 6, 1964, a sum equal to the total amount unpaid on the obligation. From this evidence the court was entitled to conclude plaintiff would have been paid the total amount due it on that date. Under these circumstances the delay in the sale proximately caused plaintiff the loss of interest on that amount. The fact plaintiff, rather than a third person, might have been the successful bidder at the sale does not dictate the conclusion plaintiff would not have been the recipient of the amount of its bid. (Cf. *John P. Mills Organization, Inc.* v. *Unger,* 215 Cal. 308, 311 [9 P.2d 833, 82 A.L.R. 758].) The mechanics of the sale is immaterial to the issue at hand. Whether plaintiff might have purchased the security by the payment of money to the trustee and in turn had been paid the same amount on the obligation secured, or might have made the purchase by authorizing the trustee to credit the obligation with the amount of its bid, the difference

is one of form. In either event the plaintiff would have received the amount of its bid which equates the payment of money. (Cf. *Witter* v. *Bank of Milpitas,* 204 Cal. 570, 580 [269 P. 614].) The delay in the sale caused a loss of the use of the money that would have been paid if the sale had not been delayed. Interest on the money during the time of the delay is a measure of damage for the loss of its use.

■ Under the rules heretofore stated, where a sale under a deed of trust wrongfully is enjoined compensation for the delay caused by the injunction may include an award to the beneficiary of interest on the amount which would have been received from the enjoined sale, provided the amount of the award, taking into consideration the amount received from the subsequent sale, may not exceed the actual loss sustained.

Defendant contends plaintiff "used" its interest in making its bid at the sale on May 19, 1965. Although there is evidence which might support this contention, there also is evidence to the contrary. The court found, at the time of the trustee's sale on May 19, 1965, the total indebtedness owing plaintiff, under the note and deed of trust, was the sum of $1,759,-976.69; and at the sale plaintiff bid the sum of $1,721,578.67, leaving unpaid the sum of $38,398.02. The finding does not specify the items of indebtedness constituting the total amount due nor the items of indebtedness discharged by the bid. The award to plaintiff of interest in the sum of $26,398.17 implies a finding that amount was unpaid. The contentions of defendant to the contrary, including its misplaced reliance on *John P. Mills Organization, Inc.* v. *Unger, supra,* 215 Cal. 308, are without merit.

■ The findings of the court on the subject of interest as an item of damage are ambiguous but, interpreted in light of the judgment, the oral decision of the trial judge and the evidence in the case, dictate the conclusion the court found plaintiff sustained a loss of interest for 90 days on the money it would have received from the enjoined sale, and such loss was proximately caused by the injunction. The court found between August 14, 1964, and November 14, 1964, interest accrued under the terms of the note secured by Surety's deed of trust in the sum of $26,398.17; and this accrual of interest was the proximate result of the preliminary injunction. Defendant contends the accrual of interest under the note was not the result of the preliminary injunction but the result of the terms of the note. However, as indicated by the oral decision of the trial judge, the finding in question was directed to a loss occasioned by the preliminary injunction.[1]

---

[1]The trial judge, at the conclusion of the case, stated: "In my judgment, the proper measure of damages in this case, in addition to those items I have mentioned [attorneys' fees and guard service], is *the* interest, which has been calculated by the parties

The findings must be interpreted accordingly. ■ On appeal any uncertainty in the findings will be construed so as to support rather than defeat the judgment; even though a finding might have been phrased more clearly, it is sufficient if its language is clear enough to indicate what the court intended; and the oral opinion of the trial judge may be considered for the purpose of discovering the process he used to arrive at his conclusion, and as an aid in interpreting the findings. (*1st Olympic Corp.* v. *Hawryluk,* 185 Cal.App.2d 832, 838 [8 Cal.Rptr. 728]; *Arvin-Kern Co.* v. *B. J. Service, Inc.,* 178 Cal.App.2d 783, 793 [3 Cal.Rptr. 238].) ■ We conclude the court found plaintiff, as a proximate result of the injunction, sustained a loss of interest on the money it would have received from the enjoined sale for the period of the injunction.

As the damages sustained by plaintiff on account of attorneys' fees, guard service and loss of interest exceed the amount of defendant's undertaking, we need not consider contentions respecting other items of damage asserted by plaintiff and included in the findings of fact.

The judment is affirmed.

Whelan, J., and Ault, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 5, 1970.

---

as allocable to the ninety-day period of the temporary injunction, amounting to $26,398.17. I will say in passing that it appears to me that I should not take into account the bid by the plaintiff at the trustee's sale, which would include interest, upon the ground that for various reasons that we have discussed here in a general way, that I don't believe there is any significance attached to the amount of the sale price at the trustee's sale for purposes of this particular action, even though it might have significance for other purposes. Therefore, the fact that interest was included in the bid is in any judgment irrelevant. . . . So far as rental [loss of rental on the real property which was the subject of the security] is concerned, the Court believes that any loss of rentals is included within *the* interest allowed, and, although loss of rentals would be an alternative measure of damages, the Court does not find it necessary to make any finding at this time as to the amount of loss of rentals." (Italics ours.)