[Civ. No. 41902. Second Dist., Div. One. Dec. 27, 1973.]

R. E. ALLEN, as Receiver, etc., Plaintiff, v.
PETER J. PITCHESS, as Sheriff, etc., et al., Defendants;
CONSTANCE A. GARNIER, as Trustee, etc., et al.,
Interveners and Respondents;
NATIONAL AUTOMOBILE AND CASUALTY COMPANY,
Objector and Appellant.

**COUNSEL**

Dillavou & Urick and Willis E. Urick, Jr., for Objector and Appellant.

Mary Ann Cohen and Abbott & Crahan for Interveners and Respondents.

No appearance for Plaintiff or for Defendants.

**OPINION**

**THOMPSON, J.**—In this appeal from a judgment pursuant to Code of Civil Procedure section 535 on an undertaking on a temporary restraining order given by appellant Surety, appellant contends: (1) the amount of damages awarded by the trial court is not supported by substantial evidence and an award of prejudgment interest is erroneous; (2) respondents who recovered the judgment are not beneficiaries of the undertaking and hence lack capacity to sue upon it; (3) respondents' claim is barred by the statute of limitations; and (4) the trial court erred in awarding respondents sanctions, pursuant to Code of Civil Procedure section 2034, subdivision (c), for appellant's denial without good reason of requests to admit facts of substantial importance served pursuant to Code of Civil Procedure section 2033. We conclude that the award of damages is excessive to the extent that it is based upon counsel fees of respondents incurred after the tempo-

rary restraining order was dissolved and that the award of prejudgment interest is excessive. We conclude, also, that the judgment is otherwise correct.

### Suit on the Undertaking

As required by law, we recite the record in the light most favorable to the findings of fact of the trial court, accepting its resolution of credibility of witnesses and the permissible inferences drawn by it.

On December 20, 1966, respondents, plaintiffs in Los Angeles Superior Court action No. 788262, recovered judgment in that case against Camille A. Garnier (Camille) in the amount of $1,682,454.02. On December 28, 1966, pursuant to instructions from respondents as plaintiff-judgment creditors in action No. 788262, Peter J. Pitchess, Sheriff of Los Angeles County, levied execution upon a bank safe deposit box maintained by Camille. The box contained 1,625 shares of common stock of Southwest Water Company of a value of $12,187.50. Execution sale was set for March 7, 1967. Camille had engaged in a course of conduct obstructing the litigation in case No. 788262. On March 6, 1967, R. E. Allen, court-appointed receiver ancillary to a divorce action brought by Ruth Garnier against Camille, filed his complaint which began the main action giving rise to the case at bench. The complaint alleges that the receiver has a right to the property prior to that of the executing judgment creditors and seeks to enjoin the sheriff from proceeding with the execution sale of the 1,625 shares of Southwest Water Company. The receiver sought and, on March 6, was granted an order to show cause why a preliminary injunction should not issue restraining the execution sale. He was simultaneously granted a temporary restraining order to that effect pending hearing on the order to show cause. Bond on the temporary restraining order was set at $500, and was posted by Weitzel & Fortney acting as brokers for appellant National Automobile & Casualty Company (Surety). Hearing on the order to show cause was set for March 20, 1967.

Counsel for respondents was informed of the temporary restraining order on March 7, 1967. He notified counsel for the receiver, who was also attorney for Ruth Garnier (Ruth) in the divorce action, that he would seek an ex parte dissolution of the temporary restraining order and invited the receiver's counsel to meet him in the chambers of the judge of the Los Angeles Superior Court to whom such matters were assigned. After a conference of counsel for respondent, counsel for Ruth, and the judge, a record of which has not been furnished us by appellant, the judge refused to dissolve the temporary restraining order but issued a minute order raising the

amount of the bond on the temporary restraining order to $5,000. Timothy L. Madden, an employee of Weitzel & Fortney and the duly authorized agent of appellant Surety, pursuant to a written power of attorney on file with the trial court, prepared a new bond to comply with the trial court's minute order and the results of the in-chambers conference. The undertaking binds appellant Surety to pay to the parties enjoined by the temporary restraining order "and to the Plaintiff-Judgment Creditors in Los Angeles Superior Court case No. 788,262" such damages not exceeding the sum of $5,000 as such parties may sustain by reason of the temporary restraining order if the court finally decides that the receiver is not entitled to it. The language adding plaintiff-judgment creditors in case No. 788262 as obligees of the bond, quoted in the preceding sentence, was interlineated in a printed bond form of appellant Surety. The bond form is captioned: "Undertaking on Temporary Restraining Order 529 C.C.P." It was executed by Madden as agent for appellant Surety and filed with the court.

Respondents were granted permission to intervene in the main action pursuant to Code of Civil Procedure section 389.5 on March 14, 1967. Hearing on the order to show cause re preliminary injunction was held on March 20 and 21. On March 21, the trial court issued its order denying the preliminary injunction and dissolving the temporary restraining order. It directed the sheriff to proceed with the execution sale of the shares of Southwest Water Company. Camille, taking advantage of the opportunity afforded by the delay in execution sale given by the temporary restraining order, instituted various proceedings by which the execution sale was prevented. The 1,625 shares of Southwest Water Company on which execution was levied have not been sold, and the temporary restraining order is a proximate cause of that result. On May 9, 1969, action No. 788262 and other matters between the parties to it were settled, and respondents recovered on account of the judgment in that case $31,000.

Interest at 7 percent per annum on the $12,187.50 value of the Southwest Water Company shares for the period March 7, 1967 to May 9, 1969, is $1,848.44. Respondents incurred an obligation for reasonable attorneys' fees for services rendered through the date of dissolution of the temporary restraining order of $3,000 and for an additional $2,000 through termination of the main action. That action terminated on April 8, 1971, when it was dismissed for the receiver's failure to prosecute it.

On June 11, 1971, respondents, pursuant to Code of Civil Procedure section 535, filed notice of motion for judgment on appellant's undertaking. The trial court entered its judgment for respondents in the amount of $5,000, the face amount of the bond. Purporting to exercise its discretion

pursuant to Civil Code section 3287, subdivision (b), it awarded interest on the amount of the judgment at the rate of 7 percent per annum from March 7, 1967, to the date of entry of judgment. It added to the judgment a sanction imposed pursuant to Code of Civil Procedure section 2034, subdivision (c), for appellant's denial without good reason of requests for admissions served by respondents upon it.

**Damages.** Arguing that the trial court erred in including within its award of damages attorneys' fees of respondents incurred after March 21, 1967, the date on which the temporary restraining order was dissolved, and that the court erred in computing prejudgment interest, appellant contends that the damages awarded by the trial court are excessive. The arguments are meritorious.

Damages recoverable upon an injunction or temporary restraining order bond "are those which appear with reasonable certainty to be the necessary and proximate result of the injunction, not exceeding the penal sum of the bond." (2 Witkin, Cal. Procedure (2d ed. 1970) Provisional Remedies, § 116, and cases there cited.) Those damages include the reasonable value of legal services to procure the dissolution of a temporary restraining order. (*Mason* v. *U. S. Fid. & Guar. Co.,* 60 Cal.App.2d 587 [141 P.2d 475].)

Here respondents incurred an obligation for reasonable attorneys' fees in the amount of $3,000 through the date of dissolution of the temporary restraining order and in the additional amount of $2,000 thereafter in defending the main action until it was dismissed for failure of the plaintiff-receiver to prosecute it. The $3,000 sum is properly treated as an amount paid or incurred to procure the dissolution of the temporary restraining order. That sum is not allocated between the portion of fees attributable to services solely to secure dissolution of the temporary restraining order and those attributable to resisting successfully the receiver-plaintiff's application for a temporary injunction. That lack of allocation does not defeat respondent's right to recover the reasonable fee, however. The situation here is analogous to that present where recovery is sought on a preliminary injunction undertaking where the injunction is regular on its face so that it becomes necessary to defend an action for permanent injunction on its merits in order to defeat the provisional remedy in the form of the preliminary restraint. In that case, reasonable attorneys' fees incurred in defeating the action on the merits and thus in also procuring dissolution of the preliminary injunction are treated as an item of damages recoverable on the preliminary injunction bond. (*Russell* v. *United Pacific Ins. Co.,* 214 Cal.App.2d 78, 86-87 [29 Cal.Rptr. 346].) In the case at bench, the

temporary restraining order was valid on its face so that the only manner in which the effect of the temporary restraining order could be dissipated was by defeating the application for a preliminary injunction which otherwise would have continued the temporary restraining order. Thus counsel fees equal to the reasonable amount incurred for the joint purpose of seeking dissolution of the temporary restraining order and preventing the issuance of a preliminary injunction are recoverable as damages on the temporary restraining order bond. The situation is materially different with respect to the $2,000 in legal fees incurred by respondents after the preliminary injunction was refused and the temporary restraining order was dissolved. Unlike the situation of a preliminary injunction valid on its face which can be defeated only by a successful defense of the action in which the preliminary injunction is issued as a provisional remedy, the temporary restraining order was successfully defeated when the preliminary injunction was refused. On the record here, legal fees incurred after that date cannot be said to be proximately caused by the temporary restraining order and hence are not damages recoverable on the temporary restraining order bond.

Appellant does not question the only other item included by the trial court in its computation of damages, interest in the amount of $1,848.44 representing compensation to respondents for denial of the use of funds that would otherwise have been realized by them from execution sale of the shares of Southwest Water Company. That item was properly included within the measure of damage recoverable on the bond (*Surety Sav. & Loan Assn.* v. *National Automobile & Cas. Ins. Co.*, 8 Cal.App.3d 752, 758-759 [87 Cal.Rptr. 572]), although it encompassed damages indirectly but proximately resulting from the temporary order and accruing after the temporary restraining order was dissolved. (See *Russell* v. *United Pacific Ins. Co.*, 214 Cal.App.2d 78, 87-88 [29 Cal.Rptr. 346].)

Thus we conclude that the proper measure of damage applicable in the case at bench is $3,000, representing reasonable attorneys' fees to secure dissolution of the temporary restraining order, plus $1,848.44 representing loss of use to respondents of a fund denied them for reasons proximately caused by the temporary restraining order. The total damage is $4,848.44 rather than the $5,000 face amount of the bond awarded by the trial court.

■ *Prejudgment Interest.* In addition to the face amount of the judgment, the trial court, purporting to exercise the discretion granted by Civil Code section 3287, subdivision (b), awarded interest at the legal rate on the judgment from March 7, 1967, to the date of entry of judgment. That statute provides: "Every person who is entitled under any judgment to

receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed." Since respondents make no claim that interest is allowable on their judgment pursuant to subdivision (a) of Civil Code section 3287, dealing with interest on damages "certain, or capable of being made certain by calculation," the critical issue here is the date upon which respondents' action to recover on appellant's bond is deemed to have been filed. The March 7, 1967, date utilized by the trial court is the date the main action was filed by the receiver-plaintiff. Respondents did not file their notice of motion to recover on the undertaking pursuant to Code of Civil Procedure section 535 until June 11, 1971. It is that date which must be deemed the critical one for the purpose of Civil Code section 3287, subdivision (b). Section 535 of the Code of Civil Procedure, which permits a party damaged by the provisional remedy of injunction to recover from the surety by motion filed in the action in which the injunction is issued, is a substitute for a common law independent action against the surety. (*Dickey* v. *Rosso,* 23 Cal.App.3d 493, 497 [100 Cal. Rptr. 358].) The action to recover on the bond thus commences when the motion is filed in lieu of the common law independent lawsuit. Here that date is June 11, 1971.

*Designation of Obligees and Statute of Limitations.* ■ Appellant's contentions that respondents are not obligees of its bond and that the claim of respondent is barred by the statute of limitations border on the frivolous.

In contending that respondents are not obligees of the undertaking, appellant argues that: (1) the bond is a "statutory" one posted pursuant to Code of Civil Procedure section 529 so that it runs only to the named defendant in the main action, thus requiring that designation of other obligees be treated as meaningless surplusage; (2) the designation of obligees in the bond fails properly to identify respondents; and (3) other persons who did not appear in the action are included in the category of obligees so that indispensable parties to the lawsuit are not before the court.

The undertaking here is on a temporary restraining order and not on a preliminary injunction so that it is not required by statute. (*Biasca* v. *Superior Court,* 194 Cal. 366 [228 P. 861].) It was authorized by reason of the trial court's inherent equitable power over provisional relief (*Signal Oil etc. Co.* v. *Ashland Oil etc. Co.,* 49 Cal.2d 764, 777 [322 P.2d 1]), and hence could include as obligees any persons who the trial court determined, in the exercise of sound discretion, should be protected against the impact of the temporary restraining order if it were found to have been

improperly issued. Respondents were persons properly protectible since they were the ones who would be damaged by an improper temporary restraining order.

The undertaking designates "Plaintiff-Judgment Creditors in Los Angeles Superior Court case No. 788,262" as obligees. Respondents and only respondents meet that description. While the judgment in case No. 788262 runs in a minute proportion not only to the plaintiffs in that action but also to "Clarence L. Kincaid" and to the "County of Los Angeles," neither of those persons is a plaintiff in the action so as to be included within the description of "Plaintiff-Judgment Creditors."

In contending that the statute of limitations bars respondents' claim, appellant argues that respondents' cause of action accrued on March 21, 1967, when the temporary restraining order was dissolved, thus commencing the running of the four-year limitation period provided in Code of Civil Procedure section 337, subdivision 1. No cause of action accrued, however, until April 8, 1971, when the main action was dismissed. (*Marsh Bros. & Gardenier* v. *Fidelity & G. Co.*, 97 Cal.App. 474, 477-478 [275 P. 886]; *Nuclear Electronic Laboratories, Inc.* v. *William C. Cornell Co.*, 239 Cal. App.2d 8, 11 [48 Cal.Rptr. 416].) Respondents' motion for judgment on the undertaking filed on June 11, 1971, was clearly timely.

*Sanctions Pursuant to Code of Civil Procedure*
*Section 2034, Subdivision (c)*

On August 20, 1971, in connection with their motion for judgment on appellant's undertaking, respondents served a request for admissions upon appellant pursuant to Code of Civil Procedure section 2033. In essence, the request seeks appellant's admission that the undertaking on the temporary restraining order is a genuine one executed by appellant, that on March 7, 1967, Madden was an agent of appellant authorized to execute undertakings on its behalf, that the undertaking was executed on behalf of appellant by an authorized agent, and that the words "and to the Plaintiff-Judgment Creditors in Los Angeles Superior Court case No. 788,262" appearing on the undertaking were placed there by appellant's agent acting within the scope of his authority. Appellant responded to the request for admissions on August 30, 1971. It admitted the genuineness of the undertaking except for words "and to the Plaintiff-Judgment Creditors in Los Angeles Superior Court case No. 788,262." The response adds, ". . .[A]s to said words by reason of . . . lack of information and belief [appellant] denies the genuineness of same." The response similarly admits the execution of the undertaking by Madden and that Madden was appellant's agent when

he did so, but excepts from the admissions Madden's authority to include the quoted phrase, basing its denial upon lack of information and belief.

Appellant's house counsel, who did not represent it at trial but who did represent it at the time of the response to the request for admissions, had interviewed Madden before the response was filed. Respondents undertook extensive investigation and discovery on the question of Madden's interlineation of the quoted phrase in the printed form bond and his authority as appellant's agent to do so. Their task was made difficult and time consuming by appellant's obdurate refusal to respond to discovery. On one occasion, the trial court imposed a sanction of $750 for appellant's willful refusal to obey a court order to respond to interrogatories relevant to the key issue raised by appellant's denial. When it did respond to interrogatories, appellant consistently stated that it did not know Madden's whereabouts, although its agents were in contact with him throughout the period when discovery was undertaken. Madden was eventually found by independent investigation conducted by respondents. Respondents incurred reasonable attorneys' fees in the amount of $4,048 in investigating and proving Madden's authority as appellant's agent to add "Plaintiff-Judgment Creditors in Los Angeles Superior Court case No. 788,262" as obligees of appellant's undertaking. At trial on the motion, evidence in the form of a power of attorney from appellant to Madden and Madden's own testimony established his authority. Appellant made no factual showing to the contrary.

On respondents' motion, pursuant to subdivision (c) of Code of Civil Procedure section 2034, the trial court awarded respondents the sum of $3,332 ($4,082 in legal fees incurred to prove the denied facts, less $750 previously reimbursed by the sanction for willful refusal to obey a court order to respond to interrogatories) as reasonable expense in proving facts of substantial importance to the litigation denied without good reason. Appellant asserts on this appeal that the trial court erred in its ruling. It argues that it had a good reason for its denial because the addition of the obligees by Madden's interlineation was illegal "under C.C.P. 529."

Appellant's argument lacks merit. Code of Civil Procedure section 2034 provides in subdivision (c): "If a party, after being served with a request under Section 2033 of this code to admit . . . the truth of any matters of fact, serves a sworn denial thereof and if the party requesting the admissions thereafter proves . . . the truth of any such matter of fact, he may apply to the court in the same action for an order requiring the other party to pay him the reasonable expenses incurred in making such proof, including reasonable attorney's fees. If the court finds that there were no

good reasons for the denial and that the admissions sought were of substantial importance, the order shall be made." Here unquestionably the facts denied by appellant were of substantial importance. Here, also, substantial evidence supports the conclusion that appellant's denial of those facts was without good reason. It is significant that the reason for denial, upon which appellant now relies, was asserted for the first time on appeal. Its response to the request for admissions states that the denial is made because appellant lacks information or belief of the fact which respondents sought to have it admit. Evidence established that the statement of lack of information was false. Appellant's conduct in improperly resisting discovery conducted by respondents with respect to the denied facts and its false response to interrogatories seeking the whereabouts of Madden, a key witness on the issue, are further evidence that appellant was acting not for "good reason" but in bad faith. (See *Hillman* v. *Stults,* 263 Cal.App.2d 848, 882-884 [70 Cal.Rptr. 295].) The clear inapplicability of the legal argument asserted on appeal as the reason for the denial to the facts of the case at bench supports a similar inference. So does the proposition that the asserted legal principle was no less available to appellant as a limitation upon the scope of the undertaking if it admitted rather than denied Madden's agency authority as a matter of fact.

The record thus supports the trial court's determination of the factual predicate for its award of reasonable expenses of proof of an unjustifiably denied request for admissions. Appellant has not purported to establish any basis for questioning the reasonableness of the attorneys' fees used by the trial court to measure the sanction. Hence, the trial court's award pursuant to Code of Civil Procedure section 2034, subdivision (c), must be affirmed.

## Disposition

That portion of the judgment which awards damages to respondents against appellant in the sum of $5000 is modified to reduce that amount to $4,848.44. That portion of the judgment which awards prejudgment interest at the rate of 7 percent from March 7, 1967, to date of judgment is modified to award interest at 7 percent per annum from June 11, 1971, to the date of judgment. The judgment, including that portion which awards reasonable attorneys' fees incurred "in making proof of facts unreasonably denied by the National Automobile and Casualty Insurance Company" is otherwise affirmed. The matter is remanded to the trial court

for computation of prejudgment interest in accord with this opinion. Each party is to bear its own costs on appeal.

Wood, P. J., and Hanson, J., concurred.