[No. F045293. Fifth Dist. Jan. 17, 2006.]

TILVA L. SOUZA, Individually and as Trustee, etc., et al., Plaintiffs and Appellants, v.
WESTLANDS WATER DISTRICT et al., Defendants and Appellants.

[No. F046478. Fifth Dist. Jan. 17, 2006.]

TILVA L. SOUZA, Individually and as Trustee, etc., et al., Plaintiffs and Respondents, v.
WESTLANDS WATER DISTRICT et al., Defendants and Appellants.

**COUNSEL**

Felger & Associates, Warren P. Felger and Jennifer D. Reisz for Plaintiffs and Appellants and for Plaintiffs and Respondents.

Borton, Petrini & Conron, Thomas C. Matychowiak and Lawrence E. DeWitt for Defendant and Appellant Westlands Water District.

McKinley & Capeloto, McKinley & Associates and Robert D. McKinley for Defendant and Appellant ACCO Finance Co. .

## OPINION

**WISEMAN, J.**—By statute, a California water district may add unpaid water charges to its regular assessment against land served by the district. The assessment automatically constitutes a lien on the land, and this is true whether the water was used by the owner or a tenant. This case presents an issue of first impression: Where the water is used by a tenant, does a district forfeit its right to add the charges to the assessment and encumber the land because, had the district followed its own regulations, the tenant would have been required to post adequate security for all the charges in advance or the water would have been turned off? Specifically, does the district lose the statutory rights just described if, pursuant to its regulations, it demands a guaranty before continuing to supply water to a tenant with a history of delinquencies, but then, contrary to its regulations, supplies more water than the guaranty can cover and the tenant again defaults? The trial court's judgment against Westlands Water District answered this question in the affirmative, effectively converting the district's regulations on delinquent customers from a shield for the district to a sword for delinquent customers' landlords. It ruled that the assessment against the land was invalid because the district violated its regulations when it supplied water without obtaining an adequate guaranty from the tenants. This was error. Assuming the district violated its regulation, no authority supports the notion that the violation gave the owner the right to escape an assessment otherwise valid and authorized by statute.

The trial court was also incorrect in its alternative ruling that the landowners were entitled to enforce the regulations as intended third party beneficiaries of the water agreement between the tenants and the district. The agreement referred to and incorporated the district's regulations. For multiple reasons, however, the owners could not have been third party beneficiaries as a matter of law.

We decline to address the landowners' argument that the assessment violated their right to equal protection of the laws, which they have raised for the first time on appeal. We reverse the judgment against the district and the award of attorneys' fees the owners obtained as prevailing parties.

Finally, we also reverse the judgment in favor of the owners against the guarantor. The court erred in ruling that the owners could recover as third party beneficiaries of the guaranty provided by the tenants to the district.

## *FACTUAL AND PROCEDURAL HISTORIES*

The essential facts are undisputed. We draw them primarily from the trial court's statement of decision.

Plaintiffs are members of the Souza family (the Souzas), who own farmland in the area served by defendant Westlands Water District (the district). They leased the land to Forrest and Edna Mae Beebower (the Beebowers) for the period from March 1, 1999, to October 31, 2001. Among other things, the lease required the Beebowers to pay the water bill.

The Beebowers entered into a contract with the district for irrigation water by executing an agricultural water allocation application and purchase agreement (the water agreement) and submitting it to the district. In the water agreement, the Beebowers promised "[t]o comply with the Terms and Conditions for Agricultural Water Service and the Regulations for the Allocation of Agricultural Water . . . both of which are incorporated herein as though set forth at length." Paragraph 18 of the terms and conditions provided that "[a]gricultural water service shall not be provided to any water user with delinquent charges . . . ." Paragraph 21 of the terms and conditions (paragraph 21) stated: "If a water user's delinquent charges are delinquent for 60 days or more . . . the General Manager shall require, as a condition of resumption of water service, that advance payment of all water charges be made for the 12-month period immediately following resumption of service, according to a schedule to be determined by the General Manager. A written guaranty in a form satisfactory to the General Manager from a recognized financial lending institution may be submitted in lieu of advance payment."

During the first year of the lease, at the end of 1999, the Beebowers fell behind in their water payments and had delinquent charges for more than 60 days. The district instructed them by letter to comply with paragraph 21. The letter stated that if the Beebowers used the guaranty option, the guaranty must be sufficient to cover all water used through January 31, 2001.

On February 29, 2000, the Beebowers paid all their outstanding charges and had a zero balance on their account on March 1, the first day of the water year. The Beebowers also obtained a guaranty from defendant ACCO Finance Company (ACCO) for future water payments. The district accepted it on April 4, 2000. It guaranteed payments for water purchased after April 3, 2000, up to $98,306, and had an expiration date of October 30, 2000.

At the time the Beebowers were behind in their water payments at the end of 1999 and early 2000, they also fell behind in their rent payments. After they missed the rent payment of $175,000 for the second year of the lease, due on November 1, 1999, the Souzas obtained a judgment against them and a writ of possession. The Beebowers subsequently paid the rent, however, and were not evicted.

The Beebowers experienced financial difficulties again in the second year of the lease. They defaulted on their July 2000 water bill for $52,586.02. The district submitted that invoice to ACCO, which paid it. The district subsequently obtained payment of $14,355.80 from ACCO for additional delinquent charges. ACCO refused to pay more, claiming that the balance of the $98,306 guaranty (i.e., $31,364.18) had been consumed by water payments it made on the Beebowers' behalf before they defaulted.

During this period, the Souzas were aware of the Beebowers' financial problems and through their lawyer sent a letter to the district requesting that it provide them with duplicates of the monthly invoices sent to the Beebowers. The district wrote back explaining that copies of each invoice were already being sent to the Souzas and that if they wished additional control over the account, they could substitute themselves as the water users for their parcels. This was never done.

The district continued supplying water to the Beebowers while they were in default and after the ACCO guaranty was exhausted. The Beebowers were never able to pay. On May 15, 2001, the district added the Beebowers' delinquent water charges to the regular assessment on the land. With penalties and interest, the additional assessment was $108,308.95.

The Souzas filed a notice of claims against public entity with the district on October 5, 2001, seeking to discharge the assessment. The district denied the Souzas' claims. Next, on December 10, 2001, the Souzas requested that the district waive paragraph 18 of the terms and conditions, barring water service to land on which delinquent charges have been incurred, so that farming operations could continue on the land while they sought judicial relief. The district denied this request also, observing that the Souzas had the ability to pay first and pursue relief afterward. To ensure that water would be supplied to the land the next year, the Souzas paid the additional assessment.

The Souzas then filed this litigation against the district and ACCO. Against the district, the complaint alleged eight causes of action: breach of the written

water agreement (of which the Souzas claimed to be third party beneficiaries); breach of an oral promise not to place a lien on the property; breach of fiduciary duty; negligent misrepresentation; negligence; promissory estoppel; removal of cloud on title; and indemnity. Against ACCO, the complaint alleged breach of the guaranty agreement, also under a third party beneficiary theory.

The case was tried to the court sitting without a jury. The trial was bifurcated, with the district presenting its governmental immunity defenses in the first phase. The court ruled that the district had immunity from the Souzas' claims of negligent misrepresentation and negligence. During the second phase, after the plaintiffs rested, the court granted judgment for the district on the Souzas' claims of breach of an oral contract (for lack of evidence), promissory estoppel (by plaintiffs' stipulation), and breach of fiduciary duty (no such duty between landowner and water district). After the plaintiffs' closing argument, the plaintiffs stipulated to judgment for the district on the claim for removal of a cloud on title.

During trial, the Souzas requested leave to amend their complaint to conform to proof. They sought leave to add a cause of action for a refund of an invalid assessment. The court granted the request over the district's objection. The amended complaint alleged that the assessment was invalid because it resulted from the district's failure to obtain advance payment from the Beebowers or a guaranty covering all charges. The amended complaint also added ACCO as a defendant on the indemnity claim.

The claims remaining after trial were breach of the water agreement, invalid assessment, indemnity, and breach of the guaranty agreement. The court issued a statement of decision resolving these, relying primarily on the invalid-assessment theory to find for the Souzas. The court reasoned that paragraph 21 had the force of law because it was a quasi-legislative rule promulgated pursuant to authority delegated by the Legislature. The district violated paragraph 21, the court found, because it did not obtain payment from the Beebowers in advance after their delinquency, and did not obtain a guaranty sufficient to cover 12 months of charges. The district should have taken, but did not take, reasonable steps to ensure that the $98,306 guaranty was enough, according to the court: Several reasonable methods of projecting the Beebowers' water costs for the year were available to the district, yielding estimates between $170,691 to $294,000, showing that the guaranty's limit was far too low. Asserting that "Westlands must follow its own rules before levying assessments on plaintiffs' Farmland," the court concluded that the Souzas were entitled to a refund.

The court also found that the district breached the water agreement and that the Souzas could recover for the breach as third party beneficiaries. The district breached the agreement, the court ruled, by violating paragraph 21. Emphasizing the benefit that would have inured to the Souzas if the district had not violated paragraph 21, the court found that the Souzas must have been intended, not incidental, beneficiaries.

The statement of decision further stated that ACCO breached its guaranty agreement when it refused to pay $31,364.18 of the face amount after the Beebowers' default because it had already paid that portion before the default. The court concluded that, because that payment was made before default, it was not a payment under the guaranty, so ACCO was liable to pay it again after the default. The court found that the Souzas were intended third party beneficiaries of the guaranty for the same reasons they were intended third party beneficiaries of the water agreement. It ruled that the district was entitled to a credit for any amount the Souzas should collect from ACCO.

Finally, the court ruled against the Souzas on their indemnity theory against the district. It found there was no oral or written promise by the district to indemnify the Souzas against losses caused by the Beebowers' default and therefore no liability under the doctrine of express contractual indemnity. After mentioning the doctrines of implied contractual indemnity and equitable indemnity, the court made no ruling on them, apparently assuming the Souzas were not relying on those doctrines. The statement of decision does not address the Souzas' indemnity claim against ACCO, presumably because of the ruling on the breach of contract claim against ACCO.

After judgment was entered for the Souzas, they filed a motion for $179,449 in attorneys' fees and $16,336 in costs. The court granted the motion, awarding the full amount of fees and $7,091.99 in costs. The court's order cited Revenue and Taxation Code section 5152 (attorneys' fees for recovery of a void assessment) and Code of Civil Procedure section 1021.5 (attorneys' fees for enforcement of an important right affecting the public interest) as authority for the award.

The district and ACCO appealed from the judgments against them. The Souzas cross-appealed, arguing that the district should not get a credit for amounts the Souzas might collect from ACCO. In a separate appeal, the district seeks reversal of the attorneys' fees award.[1]

---

[1] On February 1, 2005, the Souzas filed a request that we take judicial notice of the agenda for the district's January 18, 2005, board meeting and of a district notice to landowners dated January 27, 2005. The documents pertain to changes in the district's regulations postdating the

## *DISCUSSION*

### I. *Validity of the assessment*

The district argues that even if it violated paragraph 21, the violation did not justify the trial court's invalidation of a statutorily authorized assessment. The question is one of law, so our review is de novo. (*Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1687 [40 Cal.Rptr.2d 125]; *Dawson v. East Side Union High School Dist.* (1994) 28 Cal.App.4th 998, 1041 [34 Cal.Rptr.2d 108].)

■ We agree with the district. The assessment was properly levied pursuant to the Water Code, and there is no authority for the trial court's novel view that a landowner is entitled to avoid an otherwise valid assessment if a water district fails to follow an internal procedure.[2]

The power of a water district's board of directors to impose an assessment for unpaid water charges on the land where the water was used is established by the Water Code: "If authorized by the board of directors by resolution, [the assessor shall] add to the assessment of each parcel of land any charges for water and other services, or either, which are unpaid. The amount so added shall be collected and shall constitute a lien as a part of the assessment levied on the parcel upon which the water for which the charges are unpaid was used and upon the lands subject to the unpaid charges for any other services." (Wat. Code, § 36726, subd. (c).) Water Code section 36825 reiterates that "any unpaid charges for water and other services added to the assessment under the provisions of Section 36726 are a lien on the land and impart notice of the lien to all parties."

Apart from the effect of paragraph 21, it is undisputed that the unpaid water charges were validly added to the assessment against the Souzas' land and became a lien against the land pursuant to statute. The trial court's view was that the violation it found of paragraph 21 vitiated the addition of the

events at issue in this case. On July 22, 2005, the district filed a request that we take judicial notice of *Orff v. U. S.* (9th Cir. 1999) 358 F.3d 1137 and *Orff v. U. S.* (2005) 545 U. S. 596 [162 L.Ed.2d 544, 125 S.Ct. 2606]. The Souzas filed an opposition to this request.

The material submitted by the Souzas may be judicially noticed pursuant to Evidence Code section 452, subdivisions (b) and (h). The cases submitted by the district must be judicially noticed pursuant to Evidence Code section 451, subdivision (a). Both requests are granted.

[2] The district also argues that, notwithstanding the mandatory language of paragraph 21 ("the General Manager shall require . . ."), it had discretion to accept a guaranty that did not cover 12 months of service, and therefore it did not violate paragraph 21. Because of our decision, we need not consider whether this is correct.

charges to the assessment and vitiated the lien. Citing *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 10 [78 Cal.Rptr.2d 1, 960 P.2d 1031], it stated that the district's regulations were quasi-legislative rules and had "the dignity of statutes." Therefore, the court ruled, the district "must adhere" to its regulations and "the failure to follow these rules is a violation of the law." Most important, the court ruled that the district "must follow its own rules *before levying assessments on plaintiffs' Farmland.*" (Italics added.) Because it did not, the assessment was invalid.

Omitted from this rationale is an explanation why invalidating the assessment and ordering a refund is a proper remedy for the district's violation. The Water Code sections cited above provide simply that, if authorized by the district's board, unpaid water charges shall be added to the assessment on the land on which the water was used, shall be collected, and shall be a lien on the land. They do not provide that the validity of the assessment depends on whether the charges were incurred by an owner or a tenant or whether the district followed its procedures in attempting to obtain payment from a tenant before adding the charges to the assessment. The regulations also do not state or imply that following them is a precondition of the enforceability of the district's statutory rights against landowners.

Even if the district's regulations did purport to disable the district's statutory assessment powers in cases where the regulations were not followed, there is no authority for the view that any such self-imposed disability would be legally effective. Assuming the trial court was correct in characterizing the regulations as quasi-legislative rules entitled to judicial deference and having the status of substantive law under *Yamaha Corp. of America v. State Bd. of Equalization, supra,* 19 Cal.4th 1, there is still no warrant for the view that the district can establish exceptions to its own statutory authority by making regulations and not following them.

The only authorities cited by the trial court in support of its view that the district's violation of paragraph 21 deprived it of its statutory power to assess the unpaid charges against the land are Government Code section 15606 and *Main & Von Karman Associates v. County of Orange* (1994) 23 Cal.App.4th 337, 342 [28 Cal.Rptr.2d 432]. The Souzas' brief cites no authority at all for the view that the district's violation of paragraph 21 forfeited its right to add the unpaid water charges to the assessment on the land.

In any event, neither authority is much help to the Souzas' case. The parts of Government Code section 15606 cited by the court provide that the State

Board of Equalization shall "[p]rescribe rules and regulations to govern local boards of equalization when equalizing, and assessors when assessing" and that "[t]his section is mandatory." As no rules promulgated by the State Board of Equalization are at issue in this case, we see no relevance to these provisions. Even assuming, as the court asserted, that paragraph 21 is "analogous" to rules promulgated by the State Board of Equalization in that it is binding on the district, the fact that a rule is binding on a government entity does not, by itself, mean that a citizen, taxpayer, or property owner has a right to any particular remedy if the rule is violated.

*Main & Von Karman Associates v. County of Orange, supra,* 23 Cal.App.4th 337 involved a county assessor's use of an incorrect valuation method when assessing property taxes. The assessor used a valuation method known as the comparable sales method to determine the value of a commercial property. Rule 4 of the State Board of Equalization required assessors to make certain adjustments to valuations computed by that method. The adjustments were not made. (23 Cal.App.4th at pp. 340–341.) The owner appealed the assessment to Assessment Appeals Board No. 1 for Orange County, which affirmed the assessor on the issue of methodology. (*Id.* at pp. 340, 341–342.) The superior court denied the owner's petition for a writ of mandate. (*Id.* at p. 342.) Reversing, the Court of Appeal held that rule 4 was mandatory. (*Id.* at pp. 342–343.) It directed that the case be remanded to the assessment appeals board for further hearings consistent with the rule. (*Id.* at p. 344.) The case stands only for the well-settled proposition that if an assessor calculates property taxes using the wrong method, the taxpayer is entitled to an order directing that the taxes be recalculated using the right method. It does not support the notion that an assessment against land for unpaid water charges is invalid because the water district broke a rule requiring it to take certain steps to secure payment from a tenant of the land's owner.

In sum, the trial court relied on a non sequitur. The charges may have gone unpaid by the tenants partly because the district failed to follow mandatory internal procedures, but that does not suspend the district's statutory authority to levy an assessment for unpaid charges on the land where the water was used.

We recognize the public policy considerations implicated by the trial court's decision in this case. We may take judicial notice of the fact that, without irrigation, Westlands Water District would be a dry place: "The Westlands area receives only about seven inches of rainfall per year, primarily during the winter months. No dependable source of surface water is

found nearby, and the groundwater supply is insufficient and of poor quality. As a result, the District must rely on irrigation with imported water to make the lands agriculturally productive." (Wilson, *Westlands Water District and Its Federal Water: A Case Study of Water District Politics* (1988) 7 Stan. Envtl. L.J. 187, 189, fn. omitted.)

Whether they farm their land or lease it, landowners depend on the functioning of the district to confer economic value on their holdings. In an early case upholding a new irrigation district law and its assessment provisions, the California Supreme Court recognized that the law promoted the common good: "[The law] has for its main object the utilizing and improvement of vast tracts of arid and unfruitful soil, desert-like in character, much of it, which, if water in sufficient quantity can be conducted upon and applied to it, may be [placed under cultivation]. [¶] Such a general scheme, by which immigration may be stimulated, the taxable property of the state increased, the relative burdens of taxation upon the whole people decreased, and the comfort and advantage of many thriving communities subserved, would seem to redound to the common advantage of all the people of the state, to a greater or less extent." (*Turlock Irrigation Dist. v. Williams* (1888) 76 Cal. 360, 368–369 [18 P. 379].)

Like any other entity, the district must be financially viable in order to function, and its ability to collect water charges is obviously crucial to its financial viability. Paragraph 21 allows the district to take steps to ensure payment by delinquent water users while minimizing the need to resort to assessments. The trial court converted the district's failure to fully implement this benign measure in this case into the basis for a new inroad, unsupported by any authority, on water districts' assessment powers. The right to levy assessments is at the foundation of a water district's statutory authority as a governmental entity and its ability to obtain payment for its services. These observations are not necessary to augment the reasons for reversal set forth above. They do, however, illustrate the negative consequences that could flow from allowing the trial court's decision to stand.

We hold that the evidence failed as a matter of law to prove an invalid assessment. Because of this conclusion, we need not address the district's contention that the court erred in allowing the Souzas to amend their complaint to add that claim.

## II. *Breach of contract*

The district challenges the trial court's ruling that the district breached the water agreement between it and the Beebowers by violating paragraph 21,

and that the Souzas were entitled to recover for that breach as third party beneficiaries. We agree with the district.

"Generally, it is a question of fact whether a particular third person is an intended beneficiary of a contract," which we review under the substantial evidence standard. (*Prouty v. Gores Technology Group* (2004) 121 Cal.App.4th 1225, 1233 [18 Cal.Rptr.3d 178].) If, however, as here, the issue is presented to the court on the basis of undisputed facts and uncontroverted evidence and only a question of the application of the law to those facts need be answered, our review is de novo: "[W]here . . . the issue [of whether a third party is an intended beneficiary] can be answered by interpreting the contract as a whole and doing so in light of the uncontradicted evidence of the circumstances and negotiations of the parties in making the contract, the issue becomes one of law that we resolve independently." (*Ibid.*)

■ " 'The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract. [Citation.] If the terms of the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person. The parties are presumed to intend the consequences of a performance of the contract.' [Citation.]" (*Prouty v. Gores Technology Group, supra,* 121 Cal.App.4th at p. 1232.) A party need not show that it was intended to benefit as an individual and may prevail by showing that it is a member of a class the parties intended to benefit. (*Ibid.*) At the same time, it is not enough that the third party would incidentally have benefited from performance. (*Martinez v. Socoma Companies, Inc.* (1974) 11 Cal.3d 394, 406 [113 Cal.Rptr. 585, 521 P.2d 841]; *Bancomer, S. A. v. Superior Court* (1996) 44 Cal.App.4th 1450, 1459 [52 Cal.Rptr.2d 435].) "The circumstance that a literal contract interpretation would result in a benefit to the third party is not enough to entitle that party to demand enforcement. The contracting parties must have intended to confer a benefit on the third party." (*Neverkovec v. Fredericks* (1999) 74 Cal.App.4th 337, 348 [87 Cal.Rptr.2d 856].) In determining whether the contract contemplates a benefit to the third party, the court must read the contract in light of the circumstances in which the parties entered into it. (*Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 437 [204 Cal.Rptr. 435, 682 P.2d 1100].)

■ The trial court's ruling misapplied the third party beneficiary doctrine. First, the doctrine presupposes that the defendant made a promise which, if performed, would have benefited the third party. " 'Where one person for a

valuable consideration engages with another to do some act for the benefit of a third person . . . the party for whose benefit the contract or promise was made, or who would enjoy the benefit of the act, may maintain an action against the promisor for breach of his engagement.' " (*Prouty v. Gores Technology Group, supra,* 121 Cal.App.4th at p. 1232.) But the water agreement contains no promise or engagement by the water district to follow paragraph 21 or any other regulation. It is true, as the statement of decision notes, that the water agreement incorporates "as though set forth at length" the terms and conditions for agricultural water service and the regulations for the allocation of agricultural water, which include paragraph 21. A fuller quotation of the same passage, however, shows that the agreement provides as follows: "Beebower Farms, herein referred to as 'Water User,' hereby applies for agricultural water for the March 2000-February 2001 Water Year and agrees, as a condition of the allocation and furnishing of any agricultural water during that water year and in accordance with the District's Regulations, as follows: [¶] . . . [¶] To comply with the Terms and Conditions for Agricultural Water Service and the Regulations for the Allocation of Agricultural Water, copies of which will be furnished upon request, both of which are incorporated herein as though set forth at length."

This provision commits *only the water user* to comply with the district's regulations. The district does *not* promise the water user that it will follow its internal procedures in this or any other provision of the agreement. Further, with respect to paragraph 21, there are no grounds for *inferring* a mutual promise, because paragraph 21 only imposes a burden on the water user (advance payment or a guaranty of payment). The water user has no interest in obtaining the water district's promise that it will impose that burden. The district, likewise, had no need to include in the agreement its own promise to do what is in its own interest—no reason, in other words, to make the promise to itself.

If a contract is to be a basis of liability for the district's violation of paragraph 21—a basis independent of the theory that the district cannot levy an assessment unless it follows its own rules—it must be a contract in which the district promises to abide by paragraph 21. The water agreement does not contain that promise.

Second, even if the district had promised the Beebowers that it would follow paragraph 21, there is no evidence in the record that the Beebowers had any intent that the promise would benefit the Souzas. The trial court relied on evidence that *the district* intended landowners to benefit from

paragraph 21,[3] but that was not the correct inquiry. The point of the third party beneficiary doctrine is to allow a third party to enforce, against a promisor, rights running to the third party for which the *promisee* bargained. The promisor's intent is not at issue (although its knowledge of the promisee's intent may be [see *Martinez v. Socoma Companies, Inc., supra,* 11 Cal.3d at p. 401]). Corbin states: "In third party cases, the right of such party does not depend upon the purpose, motive, or intent of the promisor." (9 Corbin on Contracts (2002) § 776, p. 14.)

Third, the Souzas were neither donee beneficiaries nor creditor beneficiaries and therefore cannot recover as third party beneficiaries at all. The law's focus on the intent of the promisee to secure a benefit for the third party is reflected in the traditional division of third party beneficiaries between donee beneficiaries and creditor beneficiaries. This division appears in section 133 of the Restatement First of Contracts and has been embraced by California courts. (See, e.g., *Martinez v. Socoma Companies, Inc., supra,* 11 Cal.3d at p. 400; *Outdoor Services, Inc. v. Pabagold, Inc.* (1986) 185 Cal.App.3d 676, 681 [230 Cal.Rptr. 73].) Section 302 of the Restatement Second of Contracts eliminated the terms "donee" and "creditor" but retained the same concepts under new descriptions. (See 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 687, pp. 773–774.) As will be seen in the following discussion, both types of beneficiaries derive their status from an intent or obligation of a promisee to benefit them. The lack of such an intent or obligation on the part of the promisee defeats the third party's claim.

A donee beneficiary is a party to whom a promisee intends to make a gift (i.e., a benefit the promisee had no duty to confer) of a promisor's performance. An example is the plaintiff in *Gourmet Lane, Inc. v. Keller* (1963) 222 Cal.App.2d 701 [35 Cal.Rptr. 398]. There, the plaintiff, an incorporated association, sued one of its members for failing to bear a share of certain costs, as the member had agreed to do in an agreement among all the members, pursuant to which the association was incorporated. (*Id.* at

---

[3] The court mentioned two purported pieces of evidence of the district's intent to benefit landowners: First, paragraph 22 of the terms and conditions for agricultural water service augments paragraph 21 by permitting the district to impose advance payment or other conditions on a water user if it determines that the user's actions "create a financial risk or hardship for the District or its landowners." Second, a letter from the district to the Beebowers dated January 7, 2000, stated that the requirement of advance payment or a guaranty was being imposed pursuant to rules established "in order to protect the District, its water users, and landowners." The Souzas' brief mentions a third purported piece of evidence on this issue: testimony by William Johnston, an engineering consultant for the district. Johnston testified that at one time, the district used "landowner cards" to obtain owners' acknowledgements that they were statutorily required to pay for water if their tenants defaulted. "About the same time" that the district adopted the paragraph 21 procedure, it stopped using the cards.

pp. 702–704.) The Court of Appeal affirmed a ruling that the corporation could recover as a third party beneficiary: It was a donee whom the other members intended to benefit by obtaining the promise of payment from the defendant member. (*Id.* at pp. 704–706.) The Souzas were not donee beneficiaries: There is no evidence of any intent on the Beebowers' part to give them anything as a gift.

A creditor beneficiary is a party to whom a promisee owes a preexisting duty which the promisee intends to discharge by means of a promisor's performance. *Wilson v. Anderson* (1962) 208 Cal.App.2d 62 [25 Cal.Rptr. 105] is an illustration. In that case, landowners entered into a contract with broker A to find a buyer for their ranch, but then actually sold the ranch through broker B. Before the sale, the owners and broker B entered into an oral agreement under which B would pay one-third of his commission to A. When B refused to pay A, A sued as a third party beneficiary of the oral agreement between B and the owners. Affirming a judgment for A, the Court of Appeal stated that A was a creditor beneficiary of the oral agreement. The preexisting obligation between A and the owners was the original brokerage contract between them. (*Id.* at pp. 63–64.)

In this case, the Beebowers did have a preexisting obligation to the Souzas because the lease required the Beebowers to pay the water bill. A promise by the district (if there had been one) to enforce paragraph 21 against the Beebowers, however, could not be construed as a promise by the district to fulfill the Beebowers' lease obligation to pay the water bill. The district's putative promise would be a promise to compel *the Beebowers* to pay the bill or ensure its payment—not a promise to pay the bill *for* the Beebowers. We are aware of no case in which a third party beneficiary contract was formed when a promisee bargained for and obtained a promisor's engagement to force the promisee to satisfy its own obligation to the third party. The Souzas would not be creditor beneficiaries of the water agreement even if it had contained a promise by the district to enforce paragraph 21 against the Beebowers. Consequently, the Souzas were neither donee nor creditor beneficiaries. These are the only two kinds of intended third party beneficiaries, so the Souzas were not intended third party beneficiaries at all. (See *Martinez v. Socoma Companies, Inc., supra,* 11 Cal.3d at pp. 400–403, 407 [plaintiffs who were neither creditor nor donee beneficiaries were not third party beneficiaries].)

■ Next, by awarding the Souzas a refund, the trial court violated the rule that a third party beneficiary may not obtain a greater recovery than that which would have been available to the promisee. (*Marina Tenants Assn. v.*

*Deauville Marina Development Co.* (1986) 181 Cal.App.3d 122, 132 [226 Cal.Rptr. 321].) "A third party beneficiary cannot assert greater rights than those of the promisee under the contract. [Citation.] Because the foundation of any right the third person may have is the promisor's contract, '[w]hen [a] plaintiff seeks to secure benefits under a contract as to which he is a third-party beneficiary, he must take the contract as he finds it. . . . [T]he third party cannot select the parts favorable to him and reject those unfavorable to him.' [Citation.]" (*Marina Tenants Assn. v. Deauville Marina Development Co., supra,* 181 Cal.App.3d at p. 132.) Even if the water agreement contained a promise by the district to enforce paragraph 21, the Beebowers could not conceivably have obtained any recovery for a breach of that promise. The contract required the Beebowers to pay for the water. There is no imaginable scenario under which a failure of the district to enforce paragraph 21 could result in relief for the Beebowers from having to pay for water they used. By relying on the district's supposed promise to follow paragraph 21 while ignoring the Beebowers' obligation to pay for the water, the Souzas seek to " 'select the parts [of the agreement] favorable to [them] and reject those unfavorable to [them].' " (*Marina Tenants Assn. v. Deauville Marina Development Co., supra,* 181 Cal.App.3d at p. 132.) The third party beneficiary doctrine does not allow this.

Finally, the Souzas cannot recover on the water agreement as third party beneficiaries because the promisees—the Beebowers—undisputedly breached the agreement and were liable to the promisor—the district—for an amount equal to the amount the Souzas paid. If the promisee breaches the contract, and the damages to the promisor equal or exceed the amount of the benefit the promisor was to confer on the third party, the third party cannot recover. (*Votaw Precision Tool Co. v. Air Canada* (1976) 60 Cal.App.3d 52, 56 [131 Cal.Rptr. 335].) The Beebowers' nonpayment damaged the district in an amount equal to the amount the Souzas claim the enforcement of paragraph 21 would have saved them (the unpaid amount and the amount the Souzas had to pay being the same, of course), so the Souzas cannot recover any refund.

· None of the remaining arguments and considerations in the statement of decision on this issue are persuasive. The court stated that the Souzas must be intended and not incidental beneficiaries of the water agreement and that paragraph 21 "would explicitly benefit" them if followed because it would prevent unpaid charges from accruing and therefore would avoid any assessment for unpaid charges. That the Souzas would as a matter of fact benefit would not be enough to show they were intended third party beneficiaries even if the water agreement contained the district's promise to follow paragraph 21. Without more, a party who simply will receive a benefit from performance is only an incidental beneficiary.

The court also stated that "it is clear that *only* the plaintiffs could benefit from Westlands implementing the advance payment requirements on Beebower." Further, "it is difficult to see who else would benefit" from this, because the unpaid charges could not be transferred to other landowners in the district. Even assuming it is true that the district never passes its bad debt expenses on to its customers (though the court supplied no reason to believe this, and it is hard to see how those expenses could be covered otherwise), the court's conclusion does not follow. Paragraph 21 plainly is designed to benefit the district itself. Like any other business entity, it benefits from self-protective measures taken against customers who present credit risks. The fact that the district has another remedy in its power to assess the charges against the land does not show that it needs no other protection. That remedy involves costs and delays the district has an interest in avoiding. Consequently, there is no need to assume the Souzas were intended to benefit because otherwise paragraph 21 would not benefit anyone. Further, that assumption has the untenable consequence that in cases where the delinquent customer *is* the owner, the rule has no purpose at all and protects no one. (Presumably, no one would argue that the owner can invoke paragraph 21 to avoid payment in *that* situation.)

Finally, the trial court's reliance on *Zigas v. Superior Court* (1981) 120 Cal.App.3d 827 [174 Cal.Rptr. 806] is misplaced. That case involved a contract between landlords and the United States Department of Housing and Urban Development, pursuant to which the government insured a mortgage on an apartment building purchased by the landlords. In return, the landlords agreed, among other things, to limits on the rents they would charge tenants. The tenants sued the landlords, claiming they were overcharged. (*Id.* at pp. 830–831.) The Court of Appeal held that the tenants could sue on the contract as third party beneficiaries. Based on a review of the underlying statutes, it concluded that the point of the contract was to provide a benefit to the tenants of the building. Further, the landlords' promise to comply with the rent caps "could *only* benefit the tenants." (*Id.* at pp. 835–836.) Nothing similar is at issue here. Paragraph 21 is a measure to protect the district from credit risks, not a benefit program for landowners. And as we have just explained, the Souzas are not the only parties who could benefit from paragraph 21, as the district itself benefits and the benefit to the district is the point.

*Zigas* and the present case are disanalogous in other important ways as well. In *Zigas*, the third parties sought to enforce a promise the landlords (the promisors) made to the government (the promisee) and which the promisee intended to benefit the third parties. In this case, the third parties sought to enforce a promise the district did *not* make to the Beebowers which, even if it had been made, was not shown by any evidence to be intended by the promisees (the Beebowers) to be for the benefit of the third parties.

In sum: The water agreement contained no promise by the district that would have benefited the Souzas if performed. If it had, there was still no evidence in the agreement that the promisees (the Beebowers) intended the Souzas to benefit from it. If there had been a promise and the promisees had intended the Souzas to benefit from it, third party recovery of a refund for water charges would still be barred because no recovery by the promisees would have been possible and because the promisees were in breach. For all these reasons, the trial court erred in allowing the Souzas to recover for breach of contract on a third party beneficiary theory.

## III.  *Equal protection*

As part of their cross-appeal, the Souzas argue that the addition of the water charges to the assessment on their land violated their constitutional right to equal protection of the laws. Therefore, they contend, even if the trial court erred in finding for them on the theories discussed above, the judgment should be affirmed. The district contends that we should refuse to reach this constitutional issue because the Souzas did not raise it before the trial court, even though they did raise a related issue of statutory interpretation. We agree with the district's view.

In their trial brief, the Souzas argued that Water Code section 36726 (quoted in part I above) "does not by its express terms permit" the district to add a tenant's unpaid water charges to the assessment on the land—i.e., it states simply that a district may add unpaid charges for water used on the land, without asserting or denying that there is an exception for water used by a tenant—and therefore the provision is "ambiguous." The Souzas urged the trial court to resolve the purported ambiguity by referring to Water Code section 37212. Section 37212 is within part 7.5 of division 13 of the Water Code, which "provides an alternative method for the levy, collection and enforcement of district assessments . . . ." (Wat. Code, § 37200.) Any water district may elect to proceed under part 7.5 for the levy of its assessments. (Wat. Code, § 37203.) If a district elects to proceed under part 7.5, the board of supervisors of the county in which the district or a part of the district is located levies and collects assessments, including add-on assessments for unpaid water charges, on behalf of the district. (Wat. Code, §§ 37207, 37212.) Unlike section 36726—which applies to districts that (like Westlands) have not elected to proceed under part 7.5—section 37212 provides for add-on assessments for unpaid water charges only where water services were "requested in writing by the owner of the property . . . ." (Wat. Code, § 37212, subd. (a)(1).) The Souzas argued that the same limitation should be read into section 36726.

The trial court rejected this argument in a midtrial ruling. It stated: "Contention is made that Water Code section 36726 . . . subdivision (c)[,] under which this assessment was made[,] . . . was ambiguous and should be read in connection with other code sections . . . . It's my conclusion that Water Code section 36726(c) is unambiguous on its face and clearly in my view allows assessments against the whole parcel of land . . . . While it does not make specific reference to a landlord, it is clear that a parcel of land contemplates an owner of some kind, and I think that—and I will say this, the argument made by the plaintiffs in this case was extremely inventive, and I mean that sincerely, not in any sense sarcastically at all. It's something that wouldn't even have occurred to me, and I understand the argument, but I think that the code section itself, the charge ultimately goes to the parcel of land it seems to me and it's not unclear to me as I read it, so . . . that's my ruling on that."

Now the Souzas contend that their right to equal protection of the laws was violated because a similarly situated landowner in a district that used the county for levying assessments would only have had to pay a delinquent tenant's bill if the owner had requested water service in writing. There is no rational basis, they contend, for the difference in treatment. To avoid the necessity of invalidating Water Code section 36726, they further argue, we should construe that section as if it also contained a request-in-writing requirement.

This is a distinctly different issue from the one the Souzas raised in the trial court. The original argument was that section 36726 was ambiguous and the court should use section 37212 to resolve the ambiguity. The new argument is that section 36726 is unconstitutional if read literally and should be read as if it were the same as section 37212 to save it from invalidation.[4]

■ The Souzas are not entitled to raise the new issue for the first time on appeal. They argue that we may reach the issue even if it was not raised in the trial court because it presents a pure question of law.[5] There is no rule, however, that an appellate court *must* consider a pure question of law

[4] To the extent the Souzas' brief can be interpreted as *also* renewing the ambiguity argument the trial court rejected, we agree with the trial court's view. Water Code section 36726, subdivision (c), authorizes an add-on assessment and a lien on "the parcel upon which the water for which the charges are unpaid was used . . . ." The assessment and lien are upon the land. The absence of an exception for tenant-occupied land is not an ambiguity.

[5] They also argue that their trial brief did raise "the constitutionality of these statutes," and they cite a page of their trial brief. The cited page, however, says nothing about equal protection. The only hint of a constitutional issue on the page is a parenthetical reference to "due process rights," accompanied by no argument or citation of authority of any kind.

raised for the first time on appeal. Instead, the decision to do so or not "is largely a question of the appellate court's discretion." (*Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 167 [143 Cal.Rptr. 633].) Here, we are dealing not with an erroneous ruling to which no objection was raised, but with an entire substantive theory of defendant's liability—unconstitutionality of the operative statute—that was not litigated at all in the trial court. ■ Further, "we have an obligation to avoid deciding constitutional questions unless it is absolutely necessary to do so." (*City of Huntington Park v. Superior Court* (1995) 34 Cal.App.4th 1293, 1299 [41 Cal.Rptr.2d 68].) For these reasons, we decline to reach the equal protection issue.

## IV. *Governmental immunity*

Because of the conclusions reached above, we need not discuss the district's argument that the Souzas' contract and invalid assessment claims should have been barred by governmental immunity.

## V. *Guaranty*

The trial court ruled that the Souzas could recover against ACCO on the guaranty as third party beneficiaries for the same reasons the Souzas could recover against the district on the water agreement as third party beneficiaries: Paragraph 21 was intended to benefit the Souzas, so the guaranty, given pursuant to paragraph 21, must also have been intended to benefit them. This analysis would be erroneous even if the court's ruling on the water agreement was not. The water agreement and the guaranty are different contracts with different parties. The meaning of the guaranty and the intent of its parties cannot be inferred from the meaning of the water agreement and the intent of its parties. An independent analysis of the guaranty is necessary.

The Souzas propose an independent analysis in their brief. They assert that the district is the promisee, and acknowledge that Dave Ciapponi, who signed ACCO's guaranty letter on behalf of the district, did not testify that he had any intent that the Souzas would benefit by ACCO's performance. But they argue that Ciapponi's intent is irrelevant because he was not involved in negotiating the guaranty. Then they contend that the promisee's purpose must be "determined by analyzing the purpose for which the guarantee was given . . . ." This analysis in turn shows that the Souzas were intended beneficiaries because "a benefit to the landowner is inherent in the acceptance of a guarantee itself."

We reject this analysis also. Two considerations invalidate the judgment for the Souzas on the guaranty.

■ First, the Souzas could not recover as third party beneficiaries as a matter of law. If, as the Souzas argue, ACCO was the promisor, the district was the promisee, and the district intended ACCO's promise to benefit the Souzas, then the Souzas were entitled to enforce ACCO's performance, but could assert no greater rights than the district could. (*Marina Tenants Assn. v. Deauville Marina Development Co., supra,* 181 Cal.App.3d at p. 132.) The district, however, could recover nothing from ACCO because it had already received full payment from the Souzas. The creditor in a suretyship[6] relationship—here, the district—cannot recover against the surety if it has already recovered the full amount of the debt from another source. "The creditor is entitled to only one performance, and if the creditor receives that by payment or other satisfaction, the surety is discharged." (23 Williston on Contracts (4th ed. 2002) § 61:11, p. 39.)

This principle was applied in *John P. Mills Organization, Inc. v. Unger* (1932) 215 Cal. 308 [9 P.2d 833], in which the Supreme Court considered a surety bond provided by a purchaser of land to the seller. The seller lent the purchase price to the purchaser and the purchaser agreed to build houses to certain specifications on the land. When the purchaser failed to build as specified and defaulted on the loan, the seller repurchased the land at a trustee's sale for the full amount of the purchaser's indebtedness. Then it sued the surety to recover on the bond. (*Id.* at pp. 309–310.) Reasoning that if the purchaser had paid off the loan the seller would be entitled to nothing more—even if the purchaser had also failed to build as promised—the Supreme Court held that the trustee's sale satisfied the purchaser's obligation in full. As a result, there was no debt left for the bond to cover, and the surety was discharged. (*Id.* at pp. 310–311; see also *LeFlore v. Grass Harp Productions, Inc.* (1997) 57 Cal.App.4th 824, 828–830, 840 [67 Cal.Rptr.2d 340] [guarantor discharged when principal satisfied obligation to creditor].)

Because the district, having been paid in full, was in no position to collect any more money on the guaranty, its alleged third party beneficiaries, the Souzas, could not do so either. It makes no difference that it was the Souzas themselves who paid the district. "Payment by a third person does not change the result. If the third party wishes to keep the obligation alive, that party must buy the obligation, not pay it." (23 Williston, *supra,* § 61:11 at p. 41.) In other words, the only way the Souzas could have avoided discharging the

---

[6] A guarantor is a surety. (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 1002, p. 1095.)

guaranty when they paid the water charges would have been to ask the district to assign its claim against ACCO to them first.

The second reason the Souzas cannot recover on the guaranty as third party beneficiaries is that there was no substantial evidence that the promisee intended the Souzas to be beneficiaries. As the Souzas' brief acknowledges, the extrinsic evidence (Ciapponi's testimony) provides no support for their position, and they must rely on the terms of the guaranty itself, as expressed in the letter from ACCO signed by the district and the Beebowers. The Souzas' brief states: "The only relevant evidence presented at trial was the plain language of the Water Agreement . . . ." But the letter does not identify the Souzas, individually or as part of a class of intended beneficiaries, and does not purport to confer any benefit on them. It is insufficient to observe, as the Souzas do, that they would inevitably benefit from performance of the guaranty because they were secondarily liable for the debt. The Souzas have cited no authority, and we know of none, supporting the notion that every party on whom the burden to pay a debt will fall if a contract to pay it is breached is necessarily a third party beneficiary of that broken contract. In short, the evidence was sufficient to establish no more than that the Souzas were incidental beneficiaries of the guaranty.[7]

The trial court erred in ruling that the Souzas could recover on the ACCO guaranty as third party beneficiaries. In view of this, it is unnecessary to discuss ACCO's argument that it did not breach the guaranty agreement.

## VI. *Attorneys' fees and costs*

Because we hold that the court erred in entering judgment for the Souzas, we need not consider the district's arguments about why the grounds the court relied on in awarding attorneys' fees and costs do not support the award. Instead, the award of attorneys' fees and costs is reversed because the Souzas are not prevailing parties.

## VII. *Conclusion*

Water Code section 36726, subdivision (c), is a simple law. It permits a water district to add unpaid water charges to an assessment on the land where the water was used. Where the district chooses to do this, the law makes the owners of the land responsible for the unpaid charges. Nothing that happened in this case relieved the Souzas of that responsibility.

---

[7] The Souzas' claim in their cross-appeal that the district should not get an offset for payments by ACCO is mooted by our holding.

## *DISPOSITION*

The judgments in favor of the Souzas against the district and ACCO and the award of attorneys' fees are reversed. The Souzas' cross-appeal is dismissed as moot. Costs are awarded to appellants.

Vartabedian, Acting P. J., and Gomes, J., concurred.

The petition of plaintiffs and appellants for review by the Supreme Court was denied April 26, 2006, S141470.