KONENKAMP, Justice
(dissenting).
[¶ 30.] Plaintiffs, the employees of Pope & Talbot, are suing Rapid City Regional Hospital seeking, first, an injunction precluding the hospital from collecting for the medical services it provided to the employees and, second, compensatory and punitive damages against the hospital in attempting to collect its unpaid bills. The employees do not deny they received these medical services, but contend that because Pope & Talbot entered into a self-insured medical care plan, making the employees not liable for covered services under the plan, that as third party beneficiaries, they cannot be held financially responsible for their medical bills. The problem is that after Pope & Talbot went bankrupt and was sold, it ceased paying for its employees’ medical bills. With Pope & Talbot having defaulted on its obligation to pay under its self-insured plan, can the employees be held financially responsible?
[¶ 31.] Two contracts bear on this question: Pope & Talbot’s Payer Agreement with FCM and FCM’s Participating Hospital Agreement with Regional. With respect to employee liability, the Payer Agreement states: “Except as otherwise permitted under applicable law, [the employees] shall not be liable for any charges for [covered healthcare services].” In the same vein, the Participating Hospital Agreement provides: “Hospital agrees to accept payment as provided in this Agreement as payment in full for [covered healthcare services] rendered to each [employee] and shall not bill [an employee] for any balance between Hospital’s billed charges and the applicable reimbursement rate to which Hospital is entitled under this Agreement.” (Emphasis added.) These agreements form Pope & Talbot’s self-insured health care plan.
[¶ 32.] Typically, managed care agreements contain a hold harmless provision preventing hospitals from seeking payment from the enrollees for covered medical services, when the payer organization fails to pay for these services or goes bankrupt.[6] But no such provision can be *928 found in the two agreements here, and the employees have never contended that South Dakota law prohibits collection directly from them.[7] The employees rely solely on the two contracts to define their rights. Under these contracts, Regional was limited to accepting “payment as provided in this Agreement as payment in full” for covered services. The difficulty being, of course, that Regional did not receive payment “as provided in this Agreement.” The payer, Pope & Talbot, defaulted.
[¶ 33.] Accordingly, even if we assume that Pope & Talbot’s employees are third party beneficiaries, the employees cannot enforce Regional’s performance as if Pope & Talbot had continued to honor its contractual obligations. As third party beneficiaries under Pope & Talbot’s self-insured plan, the employees stand in the shoes of Pope & Talbot, and “failure of the promisee to perform a return promise ordinarily discharges the promisor’s duty to a beneficiary to the same extent that it discharges his duty to the promisee.” Restatement (Second) of Contracts § 309 cmt. b; see also Souza v. Westlands Water Dist., 135 Cal.App.4th 879, 38 Cal.Rptr.3d 78, 91 (2006).
[¶ 34.] As counsel for the employees explained, the employees “are asking this Court to enforce ... the Regional contract by prohibiting it from attempting to collect from [the employees] those payments owed by Pope & Talbot to Regional for medical services rendered under contracts herein.” Thus, they seek enforcement of the “shall not be liable for any charges” provision. But only if Pope & Talbot had the right to enforce performance from Regional, would the employees have the right to require Regional to refrain from collecting its bills directly from the employees. See Votaw Precision Tool Co. v. Air Canada, 60 Cal.App.3d 52, 131 Cal.Rptr. 335, 337 (1976) (promisee breached contract, alleged beneficiary cannot enforce contract against promisor); see also BAII Banking Corp. v. UPG, Inc., 985 F.2d 685, 697 (2d Cir.1993); Kinne v. Lampson, 58 Wash.2d 563, 364 P.2d 510, 512 (1961).
[¶ 35.] The crux of this case is Pope & Talbot’s failure to pay. In addressing this issue, the Court writes: “Failure to pay may constitute a breach of the contract but does not render the contract unenforceable or automatically discharge benefits to third parties.” To support this holding, the Court cites Weitzel v. Sioux Valley Heart Partners, 2006 S.D. 45, 714 N.W.2d 884. Weitzel is inapplicable. First, it was not a third party beneficiary case. Second, the suggestion that failure to pay may not excuse performance was made in connection with applying the prevention doctrine. This case has nothing to do with that doctrine. Here, Pope & Talbot breached the contract when it failed to pay. And Regional would be entitled to raise any claims or defenses against the employees that it could have raised against Pope & Talbot. See Oman v. Yates, 70 Wash.2d 181, 422 P.2d 489, 495 (1967) (promisee’s breach of the contract was a defense available to promisor on action by third party beneficiary); see also Restatement (Sec *929 ond) Contracts, § 309; Souza, 38 Cal. Rptr.3d at 91; State v. Osborne, 607 P.2d 369, 371 (Alaska 1980). As Professor Farnsworth explains:
Since an intended beneficiary’s right is based on the contract between the promisor and the promisee, it is measured by the terms of that contract and is generally subject to any defenses and claims of the promisor against the prom-isee arising out of the contract.
E. Allan Farnsworth, Contracts § 10.9, Vulnerability of Beneficiary to Defenses and Claims, 772 (2d ed.1990).
[¶ 36.] To stress the point, had Pope & Talbot brought an action to enforce the contracts seeking to require Regional to provide its contractually agreed medical services to Pope & Talbot’s employees, it is obvious the action would have no merit: Pope & Talbot’s failure to pay would excuse Regional’s duty to perform. See Osborne, 607 P.2d at 371; see also Rae v. Air-Speed, Inc., 386 Mass. 187, 435 N.E.2d 628, 633 (1982) (beneficiary’s recovery is limited to amount beneficiary could have recovered had promisee performed under the contract). But Regional did perform. Thus, contrary to the Court’s conclusion that “the employees cannot be charged for covered services,” Regional may still seek payment for those services from the employees, under the individual agreements each signed upon hospital admission, subject to the employees’ defenses that these are contracts of adhesion.[8] Being third party beneficiaries does not elevate the employees to a protected status, immunizing them from liability. On what conditions and m what amounts Regional may obtain payment remains to be decided in a separate lawsuit.
[¶ 37.] The Court incorrectly contends that this dissent would create an obligation for the employees under these health care contracts. It claims that Pope & Talbot’s self-insured medical plan cannot harm the employees, and that “the inability of a third party beneficiary to receive a benefit because the promisee breached the contract with the promisor does not mean that the beneficiary incurs the promisee’s liability under the contract.” In no way is it being suggested here that the two health care contracts themselves create liability for the employees. Nor is Regional making such a claim. Rather, because Pope & Talbot breached its duty to pay under its self-insured agreement, Regional is not precluded from seeking payment under the individual contracts the employees signed.
[¶ 38.] Regional provided Pope & Talbot’s employees and their dependents with medical services for which Regional has not been paid. In accord with the contract terms, Regional agreed to “accept payment as provided in this Agreement as payment in full” for covered healthcare services. Since Regional was not paid by Pope & Talbot, Regional cannot be held to the terms of the agreement.[9] Summary judgment should be affirmed.

. Collette B. Resnik, Maxicare as a Guide for Health Maintenance Organizations (HMOs) in Bankruptcy, 8 Bankr.Dev. J. 271, 281 (1991). Most states require "hold harmless” provisions in managed health care plans similar if not identical to the one adopted in the Health Maintenance Organization Model Act, promulgated by the National Association of Insurance Commissioners (NAIC). See Samsel *928 v. Allstate Ins. Co., 204 Ariz. 1, 59 P.3d 281, 288-89 (2002).

. South Dakota prohibits a managed care provider from collecting or attempting to collect from a covered person any money owed to the provider by a health carrier. SDCL 58-17C-14(2) (repealed and transferred to SDCL ch. 15-17). In oral argument, counsel for Regional said that this prohibition does not apply in this case, and the employees have not raised this issue before the circuit court or argued it before us. "Generally, failure to raise an issue below will preclude appellate review.” In re B.Y. Dev., Inc., 2000 S.D. 102, ¶ 17, 615 N.W.2d 604, 611 (citations omitted).

. The Court claims that it is not reaching the question of enforceability of these Conditions of Admission agreements, but its decision today effectively enjoins Regional from pursuing payment of its bills under these agreements. Regional's Consent to Treatment and Conditions of Admission form provides: "The undersigned agrees, whether as agent or as patient, that in consideration of the services to be rendered to the patient, he/she individually obligates himself/herself to pay the account of the Hospital in accordance with the rates and policies of the Hospital.”

. Justice Zinter’s writing assumes that Regional would have no recourse against the employees upon Pope & Talbot's failure to *930 pay until after notice of termination of the medical care contracts. Cf. SDCL 58-17C-14(2). But these contracts only bound Regional to accept the "applicable reimbursement rate” as payment in full, not to waive all payments in the event Pope & Talbot paid nothing.